# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 22-0025V

| | |
|---|---|
| MELISSA OGEA,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: May 20, 2025 |

*Alison Haskins, Siri & Glimstad, LLP, Aventura, FL,* for Petitioner.

*Ryan Daniel Pyles, U.S. Department of Justice, Washington, DC,* for Respondent.

## RULING ON ENTITLEMENT[1]

On January 10, 2022, Melissa Ogea filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") following an influenza vaccine she received on September 17, 2020. Petition at ¶1, 11. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I find that Petitioner more likely than not suffered the residual effects of her injury for more than six months, that she has provided preponderant evidence of onset within 48 hours, and that she has satisfied all of the other

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

requirements of a Table SIRVA claim. Petitioner is therefore entitled to compensation under the Vaccine Act.

## I. Relevant Procedural History

On September 7, 2023 (about 20 months after the case was initiated), Respondent filed his Rule 4(c) Report opposing entitlement. *See* ECF No. 23. Respondent argues that Petitioner has failed to establish that her shoulder pain began within 48 hours of her vaccination, and that she cannot satisfy the statutory severity requirement because she sought treatment for less than five months. Rule 4(c) Report at 3-4. Thereafter, Petitioner filed a Motion for a Fact Ruling Regarding Severity and Onset ("Mot.") on October 11, 2023. ECF No. 30. Respondent filed a response ("Resp.") on January 25, 2024 and Petitioner filed a reply ("Repl.") on January 31, 2024. ECF No. 34-35.

The matter is now ripe for adjudication.

## II. Factual History

### A. *Medical Records*

The parties agree that Petitioner had no history of shoulder pain or dysfunction prior to vaccination. *See* Resp. at 2-3; Repl. at 1. Petitioner received a flu vaccine in her left deltoid on September 17, 2020, during a visit with her primary care provider ("PCP") in Phoenix, AZ. Ex. 7 at 11; Ex. 8 at 2. Petitioner recalled "no immediate reactions," but by the following day her "arm felt extremely tender" and "it hurt to move it." Ex. 1 at ¶3.

Petitioner states that her pain continued over the next few weeks and "was getting more intense." Ex. 1 at ¶4. She "decided to let it resolve on its own" and managed her symptoms with over-the-counter medications. *Id*. She decided not to see a doctor due to work obligations and concern about treatment during the Covid-19 Pandemic. *Id*. at ¶5. Petitioner recalled talking to her PCP about her shoulder pain in December 2020 and decided to see an orthopedist. *Id*. at ¶6.

Petitioner noted that she had massage treatment for her shoulder pain before she sought formal medical treatment. *See* Ex. 9, 10. She had massages on October 9, 2020, November 19, 2020, and December 30, 2020. *Id*. at ¶5, 7, 11; Ex. 10 at 1. She also remembered trying reflexology massage on December 6, 2020,[3] which she said was so painful she had to ask the therapist to stop. Ex. 9 at ¶9.

---

[3] There is no notation for a massage on December 6, 2020 in the records submitted by Petitioner. *See* Ex. 10.

2

On January 7, 2021, less than four months after her vaccination, Petitioner saw an orthopedist that she had previously seen for other conditions. Ex. 4 at 43. She stated that "her left shoulder pain began shortly after her flu shot in mid-September." *Id*. On exam, she had positive impingement testing and pain with range of motion exercises. *Id*. at 44. The orthopedist diagnosed "subdeltoid bursitis as [a] result of her injection." *Id.* He ordered an MRI and suggested a cortisone injection. *Id*.  The MRI showed a "tear of the supraspinatus at the footplate" and "[m]ild-moderate grade tearing of the superior fibers of the distal subscapularis." *Id*. at 34. Petitioner returned to the orthopedist on January 11, 2021 for an ultrasound-guided cortisone injection. *Id*. at 20-21.

Petitioner had massages on January 28, 2021, and February 6, 2021. Ex. 9 at ¶17; Ex. 10 at 1. About a month later, Petitioner emailed her orthopedist about her continued pain. Ex. 4 at 16. She noted that the pain was "somewhat better, but it hurts the most at night." *Id*. She was advised to take diclofenac and offered physical therapy. *Id*. Petitioner stated that she "work[ed] so much it's hard to get away for PT." *Id*. Petitioner also states that she was "uncomfortable going to physical therapy due to COVID," and preferred to "continue with the massage therapy that was helping." Ex. 9 at ¶20. Petitioner states that she continued to take the diclofenac for her shoulder pain for an additional five months. *Id*.

Petitioner has stated that she asked her massage therapist "to work on [her] shoulder on March 23, 2021.[4] Ex. 9 at ¶21. On March 30, 2021, Petitioner texted a friend that her "flu arm still hurt." *Id*. at ¶22, 19. She had another massage on May 21, 2021. *Id*. at ¶23; Ex. 10 at 2.

B.   *Affidavit Testimony*

Petitioner's friend, Breann Uno, provided a statement on October 4, 2023. Ex. 13. Ms. Uno recalled having dinner with Petitioner to celebrate her birthday in April 2021, at which time Petitioner noted that she was having continued shoulder pain from her flu shot. *Id*. at ¶4.

Petitioner's sister, Kim Ogea, provided a statement on October 4, 2023. Ex. 14. Ms. Ogea recalled seeing Petitioner at their parents' home three days after her vaccination. *Id*. at ¶2. She recalled Petitioner talking about her shoulder pain, describing it as "immediate after she got the vaccination" and as a "different pain than with any other shot." *Id*. Ms. Ogea recalled Petitioner asking her to move plants in April 2021 because her left shoulder was too painful for her to move them herself. *Id*. at ¶4. Ms. Ogea was

---

[4] Petitioner's massage records do not show a massage on March 23, 2021, but do show one on April 23, 2021. *See* Ex. 10 at 1-2.

also present at the birthday dinner in April 2021 during which Petitioner discussed her ongoing shoulder pain. *Id*. at ¶5.

Marc Souterene, Petitioner's former co-worker, provided a statement on October 6, 2023. Ex. 15. Mr. Souterene recalled that Petitioner complained of shoulder pain "within the next day or two" after her vaccination. *Id*. at ¶2.

### III.   Applicable Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove by a preponderance of the evidence the matters required in the petition by Vaccine Act Section 11(c)(1). The Vaccine Act also requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act §11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. §13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the

patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

The Vaccine Act requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act § 11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. § 13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

## IV. Findings of Fact

### A. *Severity*

To satisfy the statutory severity requirement, Petitioner must demonstrate that she more likely than not suffered the residual effects of her vaccine injury until at least March 17, 2020 – six months after her vaccination. There is no dispute that Petitioner sought treatment for her shoulder pain through February 9, 2021 – four months and 23 days after vaccination – and then did not seek any additional formal medical treatment. Although Respondent concedes that Petitioner continued to receive massage treatments, he argues that those records "do not substantiate the allegation of shoulder-specific care" and was received from "a luxury service provider," not a "medical provider." Resp. at 4.

After reviewing all of the filed evidence, I find there is preponderant support for the finding that Petitioner's symptoms likely continued for at least six months from onset. The record reveals that as of Petitioner's final contact with her orthopedist's office on February 9, 2021, her treating provider had recommended additional treatment - physical therapy and anti-inflammatory medication - thus corroborating the fact that she continued to have concerning symptoms at that time. Ex. 4 at 16. Petitioner has also stated that she continued to take the anti-inflammatory medication (diclofenac) for an additional five months – or until approximately July 2021. Ex. 9 at ¶20.

Another point favoring severity is the evidence reflecting treatments that could have had an at least indirect benefit for Petitioner's shoulder. Although Petitioner opted not to do physical therapy, she did continue massage therapy, noting that it "was helping." *Id*. Petitioner's records reflect that she received massages on April 23, 2021, and May 21 2021. Ex. 10 at 2. However, although Respondent is correct that these records do not reflect treatment specific to Petitioner's shoulder, they have value as additional evidence that her symptoms continued after March 17, 2021.

Witness statements provide additional severity corroboration. Petitioner's sister, Kim Ogea, has provided testimony that in April 2021 – after the six-month mark –

Petitioner required her help to move plants due to her ongoing shoulder pain. Ex. 14 at ¶4. Both Petitioner sister and friend also recalled a birthday dinner in April 2021 during which Petitioner expressed that she continued to have shoulder pain. *Id*. at ¶5; Ex. 13 at ¶4.

Thus, after consideration of the entire record, I find that the evidence preponderates *just barely* in Petitioner's favor on this issue. Of course, the fact that Petitioner clearly *could* have obtained formal shoulder treatment – such as physical therapy – rather than massage treatment undercuts damages severity, and it is something I will factor in when determining damages in this case.

### B. *Onset*

Respondent next argues that Petitioner has not established Table onset because she first reported her shoulder pain to a medical provider more than three months after her vaccination and only reported that her pain began "shortly" after her vaccination. Resp. at 5-6.

While there are admittedly very few records in this case, Petitioner has provided bare preponderant evidence that her pain began within 48 hours of her vaccination. In her statement, Petitioner noted that her pain began the day after her vaccine. Ex. 1 at ¶3. She explained that she delayed seeking medical treatment because of her work obligations, her fear of Covid-19, and her belief that it would resolve on its own. *Id*. at ¶5. Petitioner also told her friends and family that her pain began within 48 hours of her vaccination. *See* Ex. 14 at ¶2; Ex. 15 at ¶2. Further, Petitioner related her shoulder pain to her vaccination during her treatment and there is no evidence suggesting a different onset. Ex. 4 at 43. Petitioner's use of the word "shortly" is not inconsistent with her written testimony in this case – and the simple fact that she did not state a specific time of onset does not defeat her Table claim. I thus find that there is preponderant evidence to conclude that the onset of Petitioner's pain began within 48 hours of her vaccination.

### V.    Ruling on Entitlement

### A.    *Requirements for Table SIRVA*

I have found that Petitioner has preponderantly established that her pain began within 48 hours after her vaccination. 42 C.F.R. § 100.3(c)(10)(ii). Respondent has not contested Petitioner's proof on the remaining elements of a Table SIRVA. *See* 42 C.F.R. § 100.3(c)(10)(i), (iv). Therefore, I find that Petitioner has provided preponderant evidence to establish that she suffered a Table SIRVA injury.

7

B. *Additional Requirements for Entitlement*

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows that Petitioner received a flu vaccine on September 17, 2020 in Phoenix, AZ. Ex. 7 at 11; Ex. 8 at 2; Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Additionally, Petitioner has stated that she has not filed any civil action or received any compensation for her vaccine-related injury, and there is no evidence to the contrary. *See* Ex. 1 at ¶11; Section 11(c)(1)(E) (lack of prior civil award). And as noted above, I have found that severity has been established. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master
